**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 15-CR-00540 |
| | ) | |
| SUNDAE WILLIAMS | ) | Judge John J. Tharp, Jr. |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Sundae Williams was convicted, following a weeklong jury trial, of one count of conspiracy and seven counts of receiving payments for patient referrals in violation of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b. She was acquitted by the jury on one count of violating the Anti-Kickback Statute. Following the trial, Ms. Williams moved for a judgment of acquittal or a new trial on at least eleven different grounds. *See* Mot., ECF No. 59. Her challenges range from insufficiency of the evidence, to the Anti-Kickback Statute being void for vagueness, to various evidentiary objections and jury instructions that she contends were wrongly decided. None of these challenges are meritorious. For the reasons stated below, Ms. Williams' motion for acquittal or a new trial [59] is denied.

## BACKGROUND[1]

Williams' trial began on August 22, 2016 and ended on August 30, 2016. During the trial, the government presented a large volume of records and documents found at Serenity Marketing, the home healthcare marketing company Williams owned and operated. These records included a number of checks from home healthcare agencies with memo lines

---

[1] In reviewing the jury's verdicts, the facts are viewed in the light most favorable to the government. *See United States v. Jones*, 713 F.3d 336, 340 (7th Cir. 2013).

referencing specific referred patients or numbers of patients, lists of patients marked as "done" or "paid," and various contracts with home healthcare agencies purporting to set fixed or hourly rates. The government also called several Serenity employees, federal agents who had conducted the investigation of Serenity's operations or interviewed Williams, Medicare contractor employees, and home healthcare executives who had been business partners of Williams. It also introduced a recording of a phone conversation Williams had with her nephew, a former employee. The evidence generally showed that Williams had relationships with a number of home healthcare agencies in which her firm would call individuals to inquire as to whether they were on Medicare and met certain other criteria. If so, they might qualify for home health services, and Williams would forward the patient's information to one of the home healthcare agencies that had hired her; those companies would then proceed to sign up those individuals for home healthcare services covered by Medicare. In exchange, the home healthcare agencies would send Williams a check, usually around $600 per patient, once each referred patient began receiving services covered by Medicare. Soliciting or receiving payments in exchange for referrals of Medicare patients is illegal under the Anti-Kickback Statute, 42 U.S.C. § 1320a-7(b)(1)(A). James Ademiju, who ran two of the home healthcare agencies to which Serenity referred patients, testified that he and Williams were aware of the requirements of the Anti-Kickback Statute during their relationship and conspired to avoid it. The evidence showed that Williams covered up the per-patient referral payments Serenity received by entering into contracts that included sham payment obligations tied to fixed monthly payments or hourly rates. Records revealed the simple code employed to conceal the scheme: Williams simply substituted 10 "marketing hours" for every patient referred.

Williams testified in her own defense; she also called two former employees and a lawyer with whom she had spoken in March 2013 after her nephew and a client raised concerns regarding per patient payments. Williams maintained that she stopped charging on a per patient basis in 2013 when she learned doing so was illegal and that her invoices for marketing hours genuinely reflected an hourly compensation. One of the employees, Sherry Williams (Sundae Williams' sister), testified that in 2013 Williams held a meeting of all the Serenity managers and informed them that they would begin billing based on marketing hours. The other employee called by Williams, Rhonda Morris, did not remember any 2013 meeting about changes to billing. Neither Sherry Williams nor Morris knew how marketing hours were calculated despite being senior members of the management team. Sherry Williams also testified before the grand jury that she had been told by Sundae Williams that clients were billed based on marketing hours *before* the 2013 managers' meeting. The jury deliberated for less than a day before convicting Williams of the conspiracy count and seven of the eight Anti-Kickback statute violations charged. The jury acquitted Williams on Count Two, the one Anti-Kickback charge premised on conduct before 2013. As Williams challenges nearly every facet of the government's case, the facts presented at trial are described in more detail below.

## DISCUSSION

Williams moves for a judgment of acquittal under Federal Rule of Criminal Procedure 29 and a new trial under Rule 33 for almost every one of her challenges. She also claims to bring challenges under Federal Rule of Criminal Procedure 34, which dictates that the Court "must arrest judgment if the court does not have jurisdiction of the charged offense." Fed. R. Crim. P. 34(a). However, Williams' submissions make no arguments that this Court lacks jurisdiction over the charged offense or that the indictment does not charge an offense. *See United States v. Martel*, 792 F.2d 630, 638 (7th Cir. 1986) (Rule 34 motion appropriate when the indictment did

not charge an offense under the statute of conviction); *United States v. Boender*, 719 F. Supp. 2d 951, 953 (N.D. Ill. 2010) ("the rule raises a pure question of law distinct from the evidence adduced at trial"). In fact, Williams' submissions do not even cite to Rule 34 after her initial introduction section, so the Court is unclear which arguments Williams intended this rule to apply to. Similarly, Williams contends that her motion is also pursuant to "the due process and indictment by grand jury clauses of the Fifth Amendment to the United States Constitution as well as the right to confront witnesses guaranteed by the 6th Amendment." Mot. at 1. Neither of these clauses is mentioned again after her introductory paragraph. A court is "not obligated to guess at a party's meaning," so the Court does not entertain the Rule 34 or constitutional questions further beyond how they may relate to the substantive issues genuinely raised in Williams' briefing. *Holman v. Indiana*, 211 F.3d 399, 405 (7th Cir. 2000).

Under Rule 29, the Court must "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). When a Rule 29 motion is entertained after the jury has convicted, "a defendant making a sufficiency of the evidence challenge bears a heavy burden and faces a nearly insurmountable hurdle." *United States v. Seawood*, 172 F.3d 986, 988 (7th Cir. 1999). The question presented by such a motion is whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Only if no rational trier of fact could have found the crime committed beyond a reasonable doubt can the motion be granted.

Under Rule 33, a court "may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Insufficient evidence to support a conviction is a circumstance in which justice would require granting a new trial. *See United States v. Christ,* 513

F.3d 762, 775 (7th Cir. 2008). Because the inquiries for a Rule 29 motion and a Rule 33 motion primarily overlap, at least where sufficiency of the evidence is concerned, Williams' challenges can be grouped into three rough categories: insufficiency of the evidence, void for vagueness, and trial procedural objections. Each of these categories of objections is addressed below.

### I. The Government's Evidence Was Sufficient on All Charges

Williams makes three arguments regarding the sufficiency of the evidence presented against her at trial. First, she argues there was insufficient evidence that she violated the statute "willfully" as required by § 1320a-7(b)(1). Mot. at 2-3. Second, she argues she did not refer patients within the meaning of the statute. *Id*. at 3-5. Finally, she alleges the government failed to prove the existence of the conspiracy charged in the first count. *Id*. at 5-6. However, the evidence presented by the government was sufficient for a reasonable jury to find, beyond a reasonable doubt, that Williams conspired to, and did, refer patients to home healthcare agencies in exchange for per-patient payments and knew that in doing so she was violating the law.

### A. Evidence Sufficiently Supported Williams' Willfulness

Under the Anti-Kickback Statute, a person must "knowingly and willfully solicit or receive" the kickback in order to violate the statute. 42 U.S.C. § 1320a-7(b)(1). The use of the term "willfully" in conjunction with the term "knowingly" means that "willfully" must mean "more than acting intentionally." *United States v. Wheeler*, 540 F.3d 683, 690 (7th Cir. 2008). The statute clarifies that "a person need not have actual knowledge of this section or specific intent to commit a violation of this section." 42 U.S.C. § 1320a-7(h). The Seventh Circuit has suggested that one way to give content to "willfully" is to require that "a defendant know that his conduct was in some way unlawful." *Wheeler*, 540 F.3d at 690. The Supreme Court has indicated that in criminal contexts generally, the term "willfully" usually means that the act is

done with a "bad purpose" or some knowledge that the conduct is unlawful. *Bryan v. United States*, 524 U.S. 184, 191 (1998).

On a Rule 29 motion, a defendant "must show that after viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found [her] guilty beyond a reasonable doubt." *United States v. Woods*, 556 F.3d 616, 621 (7th Cir. 2009). Here, a plethora of evidence was presented from which a reasonable jury could infer that Williams was aware her conduct was in some way unlawful. Williams had signed contracts agreeing to comply with the Anti-Kickback Statute, which also set out a statute-compliant flat-fee or per-hour payment structures, years before the conduct for which she was convicted. FBI Special Agent Aaron Woodhill testified that Williams told him in an interview that she had been aware for five years that it was illegal to charge home healthcare providers on a per-patient basis. On an audio recording made shortly before her interview with Woodhill, Williams initially refused to discuss her payment structure on the phone with the caller, a former employee and her nephew. Williams stated that she couldn't talk about that over the phone; it is more than reasonable to infer that she was reticent because she was aware the arrangement was unlawful and needed to be kept secret. Upon further prodding, however, she revealed that she used a code in which 10 "marketing hours" were equivalent to one patient.

The government also introduced testimony that in 2013, before much of the charged conduct, two individuals (Vernice Nelson and Kevin Harris) raised concerns with Williams about the propriety of per-patient payments. Williams also testified that she invoiced based on "marketing hours," but several employees testified that no one tracked their time recruiting patients for particular home healthcare agencies and even Williams' senior managers—including her sister—did not know how the marketing hours were calculated. Against this backdrop, the

government submitted compelling evidence in the form of checks and patient records showing that Williams simply converted each patient referred into 10 marketing hours. This subterfuge demonstrates that Williams, who performed the conversion and invoicing, knew that it would be illegal to receive payment for each referral and thus concealed her actions.

In the light of all this evidence, a reasonable jury could conclude that Williams knew that her conduct was illegal. It bears noting as well that the jury acquitted Williams on Count Two, the only count that charged a violation of the Anti-Kickback statute based on conduct before 2013. While that verdict comes with no explanation, it suggests that the jury likely gave Williams the benefit of the doubt as to her knowledge of the Anti-Kickback rules before 2013, while concluding that the evidence established that she knew her conduct was illegal from 2013 going forward.

Williams asserts that she lacked the requisite mental state because her conversation with attorney William Buzogany[2] led her to believe her conduct was lawful. Def. Rep. at 2. Williams certainly testified to that effect, although Buzogany indicated that they never discussed Williams' business model and that he would have discouraged her from pursuing a per-patient payment basis. The jury was not required to accept Williams' version of events in light of the competing evidence and a reasonably jury could find Williams' testimony not credible, especially when it conflicted with the testimony of many other witnesses. *See, e.g., United States v. Facen*, 812 F.3d 280, 287-88 (2d Cir. 2016) (jury "was not required to accept" defendant's testimony when conflicting testimony was provided). "[I]t is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts and draw reasonable

---

[2] The parties have struggled with the correct spelling of Mr. Buzogany's name, with the defendant referring to him as "Bozagny" in her filings. *See* Def. Rep. at 2. The Court uses the spelling provided at the beginning of trial.

inferences." *United States v. Hagan*, 913 F.2d 1278, 1281 (7th Cir. 1990). Sufficient evidence supports the jury's determination that Williams willfully violated the statute.

### B. Evidence Sufficiently Supported That Williams Referred Patients

Williams also contends that she did not refer patients within the meaning of the Anti-Kickback Statute. Williams maintains that she merely "forwarded" patients to home healthcare agencies, and that such behavior does not constitute referral because she is not a healthcare provider or decision-maker. Mot. at 3-5 Alternatively, she suggests, there was "no or limited evidence relating to how the persons named in Counts II-VIII came to be patients of the home health care agencies." Mot. at 5. These contentions are also without merit.

Williams contends she could not have referred patients because she is not a healthcare provider or decision-maker (that is, she did not have final authority over whether or not the patients in fact received home healthcare services – those needed to be authorized by a doctor). A brief glance at the statute and case law, however, demonstrates that a defendant need not be a doctor to be convicted under the Anti-Kickback Statute. The statute specifically states that "[w]hoever" solicits or receives kickbacks is guilty, without limiting its reach to medical personnel. 42 U.S.C. § 1320a-7(b)(1). Furthermore, a number of courts have found individuals who were not doctors could be convicted of violating the Anti-Kickback Statute. For example, in *United States v. George*, the defendant raised identical arguments to those Williams raises here – that she was just a marketer and doctors had to approve her referrals – and those were rejected by the court. *See United States v. George*, 171 F. Supp. 3d 810, 2016 WL 1161269, *5 (N.D. Ill. 2016) ("Defendant's actions in this case are clearly referrals under the Anti-Kickback Statute."). Similarly, other courts have upheld the convictions of pharmacy company executives, nursing staffing company owners, and hospital chief operating officers. *See United States v. Vernon*, 723

F.3d 1234, 1254 (11th Cir. 2013) (*"*the plain language of the statute is not limited to payments to physicians who prescribe medication"); *United States v. Shoemaker*, 746 F.3d 614, 629 (5th Cir. 2014) ("the statutory text [] limits liability not by narrowing the field of 'any person[]' but by defining culpable intent").

That a doctor had to approve the referrals for care before services were provided, moreover, does not render the Anti-Kickback Statute inapplicable. As the Fifth Circuit noted in *Shoemaker*, reading the statute in this way would invite "untenable" consequences and opportunities for gamesmanship. *Shoemaker*, 746 F.3d at 629. In *United States v. Polin*, the Seventh Circuit found that a referral had taken place even though the service provider had "to receive the physician's authorization before commencing services." 194 F.3d 863, 866 (7th Cir. 1999). Williams hangs her hat on the end of that sentence: "but that permission seemed to be more of a formality or rubber stamping of Haberkorn's referral." *Id*. However, the Seventh Circuit then went on to ridicule the idea that a physician's approval eliminated an Anti-Kickback Statute violation because otherwise "[o]nly a physician could violate" the referral provision and such a result was "absurd." *Id*. The formality of the approval was not the deciding factor in the defendant's liability. The fact that the Seventh Circuit, in *United States v. Patel,* also found that the referral provision "extends[s] to the certification and recertification of patients for government-reimbursed healthcare" does not alter this analysis. 778 F.3d 607, 615 (7th Cir. 2015). Simply because the Seventh Circuit read the statute to ***also*** cover physician authorization does not mean that is the ***only*** way a referral can be made.

Williams further asserts that it is unclear how individuals came to be patients of the home healthcare agencies. This causation argument is a post-hoc makeweight. The dispute at trial was not about whether Serenity directed patients to particular home healthcare agencies but on

whether Serenity was compensated specifically for doing so or for providing general "marketing" services. The government presented substantial documentary evidence, and in one instance the direct testimony of a patient, demonstrating that, after locating potentially eligible patients, Serenity sent the patients' information to the home healthcare agencies with which it had relationships and that Medicare was later billed by those home healthcare agencies for services for those same patients. This evidence included patient names on various Serenity internal documents and in correspondence with the home healthcare agencies. The government also introduced Medicare billing records demonstrating the patients had received services from the home healthcare agencies. This evidence is sufficient for a jury to find that the individuals named in the indictment became patients of the relevant home healthcare agency because Williams referred them to the agency; Serenity's referrals were directly tied to the enrollment of the patients by the home healthcare providers and their payments to Serenity reflected that fact.

### C. Evidence Sufficiently Supported Existence of the Conspiracy

Williams also alleges that the government introduced "inadequate proof of any such agreements," presumably meaning any conspiratorial agreements. Mot. at 5. The Seventh Circuit has acknowledged "the difficulty of pursuing a sufficiency-of-the-evidence approach to challenge a conspiracy conviction." *United States v. Williams*, 9 F. App'x 516, 521 (7th Cir. 2001). "Because of the secretive character of conspiracies, direct evidence is elusive, and hence the existence and the defendant's participation can usually be established only by circumstantial evidence." *United States v. Moya-Gomez*, 860 F.2d 706, 759 (7th Cir. 1988). Here, however, the government presented direct as well as circumstantial evidence of the agreements to the conspiracy. James Ademiju, a former business partner of Williams' who ran two home healthcare agencies, testified that he and Williams agreed to sign facially legal contracts and then

to base payment on illegal (that is, per-patient) terms. Furthermore, the government introduced a variety of documentary evidence suggesting that Williams and other home healthcare agency owners had signed facially legitimate contracts and even submitted facially legitimate invoices, but had done so to conceal the true (illegal) terms of the payments. To take just one example among many presented at trial, the government introduced the check referenced in Count Six of the indictment, which includes a notation that it was for twenty hours of marketing services. The government also introduced (in Gov. Ex. 33) a Serenity "update form" showing that two patients were marked as "closed" on the date of the check. The government also introduced Medicare records showing it had been billed for those payments just days before the check was cut to Serenity. Combined with the other testimony, the "twenty hours" was clearly code for two patients who had been successfully billed to Medicare.

Williams alleges that Ademiju's testimony was "incredible," but it is the role of the jury to make credibility determinations. *See* Mot. at 6. Furthermore, even if the jury had discredited Ademiju's testimony, the government can prove a conspiracy charge through indirect evidence like the contracts and payment communications. *See United States v. Townsend*, 924 F.2d 1385, 1390 (7th Cir. 1991) ("Conspiracies, like other crimes, may be proved entirely by circumstantial evidence."). A rationale jury could, through Ademiju's testimony and the variety of deception and secrecy mechanisms used by Williams to conceal her payment arrangements, find the necessary agreements to convict Williams of conspiracy.

## II. The Anti-Kickback Statute Is Not Void for Vagueness

In a brief paragraph, Williams alleges that the Anti-Kickback Statute, 42 U.S.C. § 1320a-7(b)(1)(A), is void for vagueness because it does not provide sufficiently fair warning of what conduct is illegal. Mot. at 6. The relevant statute provides:

> Whoever knowingly and willfully solicits or receives any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind . . . in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program . . . shall be guilty of a felony and upon conviction thereof, shall be fined not more than $ 25,000 or imprisoned for not more than five years, or both.

42 U.S.C. § 1320a-7(b)(1)(A). Under Seventh Circuit law, a statute is unconstitutionally vague if it "(1) does not provide a person of ordinary intelligence a reasonable opportunity to know what is prohibited, or (2) fails to provide explicit standards to prevent arbitrary and discriminatory enforcement by those enforcing the statute." *United States v. Plummer*, 581 F.3d 484, 488 (7th Cir. 2009). Williams' void-for-vagueness argument must be an as-applied challenge under the Due Process Clause. *See id.* ("[s]uch challenges are analyzed as-applied unless First Amendment interests are threatened, which is not the case here").

The Anti-Kickback Statute provision at issue does provide a person of ordinary intelligence with a reasonable opportunity to know what is prohibited. At its basic level, the statute clearly forbids receiving money or goods, in any way, in exchange for referrals of Medicare patients to providers of services and goods. In this case, as discussed above, the government demonstrated that Sundae Williams received cash indirectly (through her company) in exchange for referring patients to receive home healthcare services paid for by Medicare. This conduct is clearly covered by the statute.

Even if the statute were ambiguous, "a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice" a defendant receives. *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 499 (1982). Here, the statute explicitly includes a high scienter requirement – that the defendant "knowingly and willfully" receive the kickback. *See* 42 U.S.C. § 1320a-7(b)(1). This strong scienter requirement overcomes any

potential vagueness in the statute because a person who would otherwise be ensnared without notice does not violate the statute. Myriad courts have previously considered vagueness challenges to the Anti-Kickback Statute and rejected them, largely on the basis that the requirement of willfulness—knowledge that the act is unlawful—mitigates any vagueness concerns. *See United States v. Lahue*, 261 F.3d 993, 1006 (10th Cir. 2001) (rejecting vagueness challenge to the Anti-Kickback Statute); *United States v. Starks*, 157 F.3d 833, 840 (11th Cir. 1998) ("although the statute does provide for criminal penalties, it requires 'knowing and willful' conduct, a mens rea standard that mitigates any otherwise inherent vagueness in the Anti-Kickback statute's provisions"); *Hanlester Network v. Shalala*, 51 F.3d 1390, 1398 (9th Cir. 1995) ("These factors militate against finding the anti-kickback statute void for vagueness. The statute regulates only economic conduct. It chills no constitutional rights. While the statute allows for criminal penalties, it requires 'knowing and willful' conduct, a requirement which mitigates any vagueness in the statute."); *United States v. Bay State Ambulance & Hosp. Rental Serv.*, 874 F.2d 20, 32 (1st Cir. 1989) ("When the Medicare Fraud statute is analyzed under the applicable standards, and in light of the fact that inducement is the gravamen of the offense, the statute passes constitutional muster even though the criminal nature of the statute requires "a relatively strict test" for constitutionality."). In fact, this Court could find no decision in which a court found § 1320a-7(b)(1)(A) unconstitutionally vague. *See, e.g., United States v. Krikheli*, No. 08-CR-528 (SLT), 2009 WL 4110306, at *3 (E.D.N.Y. Nov. 24, 2009) (rejecting vagueness challenge to Anti-Kickback Statute); *United States v. Mathur*, No. 2:11-CR-00312-MMD, 2012 WL 4742833, at *11 (D. Nev. Sept. 13, 2012), *report and recommendation adopted*, No. 2:11-CR-00312-MMD, 2012 WL 4711960 (D. Nev. Oct. 3, 2012) (same).

### III. Williams' Trial Objections Were Correctly Overruled

Williams raises at least seven distinct objections regarding jury instructions and evidentiary rulings made at trial. *See* Mot. 6-7. She also attempts to incorporate by reference essentially every other possible argument raised during the course of the trial regarding jury instructions. On page 6 of her motion, she "reasserts and adopts the arguments made during the instruction conferences at trial." On page 7, she asserts that she "is entitled to judgement of acquittal or a new trial" because "the other evidentiary objections[] she made during trial were not sustained" and "because the Government did not prove beyond a reasonable doubt that her conduct violated the law." On page 8, "Williams incorporates herein by reference and expressly reasserts and preserves all written pleadings and all oral motions, objections, requests and arguments made before, during, and after the trial." The Court recognizes that Williams' counsel is seeking to avoid the forfeiture of any potential argument on appeal, and will leave the adequacy of his efforts in that regard to the appellate court to evaluate. For the purposes of this motion, however, these arguments incorporated by reference are inadequate and undeveloped and are therefore waived. *See United States v. Paz-Alvarez*, 799 F.3d 12, 31 (1st Cir. 2015) (arguments from motions incorporated by reference waived); *United States v. Orrego-Martinez*, 575 F.3d 1, 8 (1st Cir. 2009) (incorporating arguments by reference into motions "consistently and roundly condemned" and "any incorporated argument is ordinarily deemed forfeited"); *McCarthy v. Fuller*, No. 1:08-CV-994-WTL-DML, 2014 WL 4672394, at *3 (S.D. Ind. Sept. 18, 2014), *rev'd and remanded on other grounds*, 810 F.3d 456 (7th Cir. 2015), *cert. denied sub nom. Fuller v. Langsenkamp*, 136 S. Ct. 1726, 194 L. Ed. 2d 813 (2016) (refusing defendants' request the court "incorporate by reference their other post-trial motions and request that the Court consider the legal and factual grounds set forth in all of their motions"). As the Seventh

Circuit has said, "it is not this court's responsibility to research and construct the parties' arguments." *Draper v. Martin*, 664 F.3d 1110, 1114 (7th Cir. 2011). The remaining seven objections, all of which are made without any citations to legal authority other than one citation to the Federal Rules of Evidence, are discussed below. None is meritorious.

First, Williams requests a judgement of acquittal[3] or a new trial on the basis of the Court's refusal to give her preferred jury instruction on the meaning of the term "remuneration." "In order to receive a new trial based on erroneous instructions, a defendant must show both that the instructions did not adequately state the law and that the error was prejudicial to [her] because the jury was likely to be confused or misled." *United States v. White*, 443 F.3d 582, 587 (7th Cir. 2006) (internal quotation marks omitted). The Court is unsure to what part of the three page long instruction on remuneration Williams objects, especially given that the vast bulk of the instruction, including two elaborate safe harbors, was proposed by her attorney. The Court assumes the objectionable portion of the instruction is the portion not suggested by her counsel: "[t]o be found not guilty on the basis of these standards [the safe harbor provisions], the defendant must prove that it is more likely than not that these standards were met." Jury Instructions 14, ECF No. 57. The Court made an extensive oral ruling on this language on August 30, 2016. The Seventh Circuit has stated that "when a statute is silent on the question of affirmative defenses and when the affirmative defense does not negate an essential element of the offense, we must presume that the common law rule that places the burden of persuasion on

---

[3] The Court also notes that a judgment of acquittal is not an appropriate remedy for an erroneous jury instruction. Under Rule 29, the only basis for a motion for a judgment of acquittal is that "the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). *See also Hallmark Ins. Admr's v. Colonial Penn Life Ins. Co.*, 990 F.2d 984, 990 (7th Cir. 1993) ("The usually appropriate remedy for an erroneous jury instruction is a new trial."); *Heller Int'l Corp. v. Sharp*, 974 F.2d 850, 860 (7th Cir. 1992) ("judgment n.o.v. is not the correct remedy for erroneous jury instructions").

the defendant reflects the intent of Congress." *United States v. Jumah*, 493 F.3d 868, 873 (7th Cir. 2007). The safe harbor provisions here do not indicate the burden of proof and do not negate an essential element of the offense. Other courts to have considered the safe harbor provisions in the context of the Anti-Kickback statute have similarly placed the burden of proof on the defendant. *See, e.g., United States v. George*, 171 F. Supp. 3d 810, 2016 WL 1161269, *7 (N.D. Ill. 2016); *United States v. Vernon*, 723 F.3d 1234, 1269 (11th Cir. 2013); *United States ex rel. Westmoreland v. Amgen*, Inc., 812 F. Supp. 2d 39, 80 (D. Mass. 2011). Therefore, the Court finds the remuneration instruction adequately stated the law and does not require a new trial.

Second, Williams alleges she is entitled to a new trial because her requested "instruction regarding the attorney client relationship" was not given. Mot. at 6. Ms. Williams did not include a proposed attorney-client instruction in the initial set of proposed jury instructions and instead chose to merely give "notice of her intent that she may seek an advice of counsel instruction at the end of the case." *See* Def.'s Proposed Jury Instructions 6, ECF No. 38. An advice of counsel instruction was given to the jury. *See* Jury Instructions 11-12. This instruction provided that Williams lacked the necessary willfulness if she relied in good faith on the advice of an attorney and met certain listed requirements. *Id*. The instruction is identical to the Seventh Circuit's Pattern Criminal Jury Instruction 6.12 for criminal cases with the exception of feminine pronouns being substituted for masculine ones. *See* Seventh Circuit Pattern Crim. Jury Instructions (2012 ed.) 6.12, 99. The Pattern Instruction directly mirrors the requirements as laid out in Seventh Circuit case law. *See United States v. Van Allen*, 524 F.3d 814, 823 (7th Cir. 2008) (listing elements of an advice of counsel defense); *United States v. Joshua*, 648 F.3d 547, 554 (7th Cir. 2011) (advice of counsel is relevant only to negating intent). The Court can find no other proposed instruction regarding any sort of attorney-client relationship proposed by

Williams, and so is unsure what language Williams feels she was denied. Regardless, the instruction adequately states Seventh Circuit law on the only attorney-related subject relevant to Williams' guilt. Therefore, the instruction does not require a new trial even if Williams would have preferred alternative or additional verbiage.

Third, Williams challenges the Court's decision not to give her preferred instruction regarding the definition of the term "referral," which she based on the same premise, discussed above, that a referral under the Anti-Kickback Statute requires a physician's approval. The jury instructions defined "referral" as "an action that directs a patient to a particular provider of services." *See* Jury Instructions, 14 ECF No. 57. This instruction is in line with definitions from the Seventh Circuit, which has defined "referral" as "something that either directs a patient to a particular provider or allows the patient to receive care from that provider." *United States v. Patel*, 778 F.3d 607, 618 (7th Cir. 2015). Because the instruction accurately stated the law, the refusal to give Williams' preferred instruction on the meaning of "referral" does not merit a new trial.

Fourth, Williams challenges the introduction of a variety of documents, found during an F.B.I. search of Serenity's offices, as business records. Mot. at 6-7. Williams does not identify any particular document, but merely refers generally to "documents." *Id*. at 6. On that basis alone, her argument fails, because she is required to identify evidentiary objections with particularity. *See United States v. Walls*, 225 F.3d 858, 868 (7th Cir. 2000); *Wickstrom v. Schardt*, 798 F.2d 268, 270 (7th Cir. 1986). In any event, under Federal Rule of Evidence 803(6), a document qualifies as a business record if: "the record was made at or near the time by — or from information transmitted by — someone with knowledge; the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or

not for profit; making the record was a regular practice of that activity; all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and neither the opponent does not show that the source of information nor or the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6). Williams contends the first four criteria were not met. Mot. at 7.

Initially, the government introduced many documents through the testimony of an F.B.I. agent involved in the search of Serenity's offices. He described the places in which the documents had been found (predominantly management offices and a file room) and the manner in which they were kept. This testimony provides a reasonable basis to conclude that the documents were generated and maintained in Serenity's normal course of business, and a law enforcement witness may serve as a qualifying witness through which business records may be introduced. *See United States v. Franco*, 874 F.2d 1136, 1140 (7th Cir. 1989). Later witnesses identified many of the specific documents introduced and testified that creating and faxing such documents were among their job responsibilities. They described in detail how they came to receive various pieces of information that were recorded on the documents and other staff members discussed how they further used the documents on a regular basis. Williams herself admitted to sending a variety of the emails introduced and signing a variety of contracts. From these statements, it is clear that many, if not all, of the documents admitted as business records were made (or received) by the Serenity employees who testified, kept in the course of regularly conducted activities, and did so as a regular practice. Furthermore, a witness need not have personal knowledge of the entries in the record as long the witness knows how the records were created. *See Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 735 F. Supp. 2d 856, 867 (N.D. Ill.

2010). Without further information about exactly which exhibits Williams wishes to challenge, the Court declines go into further detail as to individual exhibits but concludes that the documents introduced by the government properly qualify as business records.

Fifth, Williams claims that she should be acquitted or retried because "no evidence was presented" that Williams "received the funds at issue." Mot. at 7. The premise of this argument is not that payments were not made, but that the checks went to Serenity's bank account, rather than Williams' personal account. The Anti-Kickback Statute, however, is violated by the receipt of remuneration "directly or indirectly, overtly or covertly." 42 U.S.C. § 1320a-7(b)(1). Requiring remuneration be deposited directly into a defendant's bank account reads "indirectly" and "covertly" out of the statute. *United States v. Liss,* 265 F.3d 1220, 1231 (11th Cir. 2001) (payments made for office space and equipment can constitute remuneration under the Anti-Kickback Statute, even when such payments are made directly to a bank). The indirect benefits of remuneration can take many forms. For example, receiving a stake in a business is sufficient remuneration. *See United States v. Omnicare, Inc.*, No. 07 C 05777, 2013 WL 3819671, at *14 (N.D. Ill. July 23, 2013). A family member receiving an economic benefit is also sufficient. *See id.* at *48-49. Similarly, payments made to Serenity, a company solely owned and operated by Williams, can be considered indirect or covert remuneration to Williams. Even if Williams never withdrew a cent of the funds given as kickbacks, she was still invested in the success of her company in the same way a parent is invested in the success of her child. Thus, illegitimate payments made to Serenity indirectly benefited Williams. This connection is sufficient to satisfy the requirements of the Anti-Kickback Statute.

Sixth, Williams argues she is entitled to a new trial because "as to various counts the only evidence was names written on sticky pads near the checks and the trial testimony made clear

that it was unclear when these sticky pads were even placed on the checks." Mot. at 7. Williams does not specify which counts she believes were supported "only" by sticky pad notes, but this statement is true for none of the counts. The government introduced a variety of evidence to support each charge. This evidence included the checks that provided the payments alleged in each count, testimony from one of Williams' former business partners regarding the amount paid per patient, the contracts outlining a different compensation scheme, and testimony from various employees regarding interactions with the various home healthcare agencies. The sticky notes attached to one or two of the checks were simply one piece of evidence the jury presumably used (and it would have been reasonable for them to do so) in considering whether Williams committed the alleged crimes. The use of this evidence does not warrant a new trial or a judgment of acquittal.

Seventh, Williams alleges she is entitled to a new trial because "she was not permitted to argue that Mr. Bozagny [sic] was her lawyer and that she relied on his advice." Mot. at 7. As noted above, an advice of counsel jury instruction was given at the request of the parties. It was, however, perfectly reasonable for the jury to reject Williams' advice of counsel argument because she failed to adduce evidence to establish that defense. To qualify for an advice of counsel defense, Williams must have: 1) sought the advice of an attorney before taking action, 2) consulted this attorney for the purpose of securing advice about the lawfulness of her future conduct, 3) made a full and accurate report of all material facts that she knew, and 4) acted strictly in accordance with the advice of this attorney. *United States v. Van Allen*, 524 F.3d 814, 823 (7th Cir. 2008). Williams failed to produce any evidence regarding at least the third and

fourth prongs of this analysis.[4] First, Buzogany (the attorney in question) stated that he and Williams did not discuss the details of her operation, billing, or finances. Rather, he went in to sell her a compliance plan (his specialty) and spoke in generalities about why such a plan might be a good idea. Under no circumstances can Williams be said to have made a "full and accurate report" of her conduct, since Buzogany was unaware what conduct, if any, was occurring. Furthermore, to the extent that Buzogany did provide advice based on what he could determine from their brief conversation, Williams did not follow the advice he gave her. In her reply brief, Williams hangs her hat on a section of Buzogany's testimony where he recounted having told her to "[b]e upfront" and not to "hide" her payment structure. Def. Reply at 2. However, the government introduced a great variety of evidence that Williams continued to hide her true payment structure with the home healthcare agencies, continuing to receive payments that deviated from her contracts, tracked the number of patients who were successfully billed to Medicare, and failed to track employee hours in any way that could legitimately result in hourly billing. Williams could not have successfully asserted a successful advice of counsel defense based on the evidence she presented at trial, so a new trial on the basis of her inability to argue that defense is unwarranted.

*       *       *

---

[4] There is also an argument that Williams failed to consult a lawyer before taking action, since she met with Buzogany only several years into her business. At this point, she had already signed several contracts and begun accepting payments for the referral of patients. Williams also arguably failed to meet her burden because she failed to produce the actual advice Buzogany allegedly gave her. *See SEC v. McNamee,* 481 F.3d 451, 456 (7th Cir. 2007) ("It isn't possible to make out an advice-of-counsel defense without producing the actual advice from an actual lawyer."). Williams' only contact with Buzogany during the relevant period was oral, which may very well fall outside the Seventh Circuit's understanding of "advice" required to invoke an advice of counsel defense.

The government introduced sufficient evidence for a reasonable jury to convict Williams on all the counts of conviction. The Anti-Kickback Statute, under which she was convicted, is not unconstitutionally vague. The Court's jury instructions adequately stated the law, and its evidentiary rulings were correct. Therefore, Williams' motion for acquittal or a new trial is denied.

Dated: October 31, 2016

John J. Tharp, Jr.
United States District Judge